IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MONICA JEFFRIES, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX-19-01816 |
| FEDERAL EMERGENCY MANAGEMENT AGENCY | * | |
| | * | |
| Defendant. | | |
| | *** | |

**MEMORANDUM OPINION**

Pending before the Court is Defendant Federal Emergency Management Agency's ("FEMA") Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. ECF No. 19-1. The motion is fully briefed and no hearing is necessary. *See* Loc. R. 105.6. For the reasons that follow, the Court grants in part and denies in part Defendant's motion.[1]

**I.   Factual Background**

Since October 2015, Plaintiff Monica Jeffries was employed in FEMA's Emergency Management Division as a Human Resources Specialist, Reservist. ECF No. 19-3. The Federal Reservist Program provides "a robust incident workforce of well-trained, intermittent employees who can readily deploy to support the needs of disaster survivors and their communities." ECF No. 19-4 at 2. Reservists are deployed as part of FEMA's response to national disasters and are compensated for the time worked only while on deployment. *Id*.

As part of her job, Jeffries was issued a government credit card and laptop to be used for work-related assignments. Jeffries also executed a Condition of Employment Agreement which

---

[1] The Court considers Plaintiff's surreply and grants the accompanying motion (ECF No. 26). Loc. R. 105 (2)(a).

set forth the terms of her at-will employment.  Relevant to this case, Jeffries agreed to use her government issued credit card only for work-related expenses.  ECF No. 19-5 at 2–3.  Jeffries also acknowledged that she had reviewed and was familiar with all applicable FEMA guidelines and written conditions of employment, which included safekeeping provisions for FEMA equipment such as the laptop.  *Id*.

To address employee misconduct, FEMA implemented a "progressive discipline" policy.  ECF No. 24-16.  The policy directs supervisors that they "*shall* first consider the least severe discipline for the offense, depending on the nature of the offense and the surrounding circumstance."  *Id.* (emphasis added).  The policy's stated goal is to "correct a situation before it becomes necessary to impose a harsher penalty."  *Id.*  "Such measures start with reprimands and short suspensions.  However, if the first or second offense of misconduct is egregious or the violation of rules and regulations is flagrant, a severe penalty (i.e. long suspension or removal) may be imposed."  *Id.*

Louis Perez, Supervisor Program Manager, acted as Jeffries' immediate supervisor during her entire employment.  ECF No. 19-10 at 3.  Prior to Jeffries' mobilization to Puerto Rico, Jeffries had sought disability accommodation from Perez in which she documented her "medical illness."  *Id*.  The record does not include information about Jeffries' specific ailment that prompted her to seek accommodation.

Before Puerto Rico, Jeffries had been mobilized to a FEMA site in Austin, Texas.  ECF Nos. 1-2 at 21; 19-1 at 3.  While there, Jeffries used her FEMA credit card to purchase clothes and luggage, in violation of FEMA's credit card usage policy.  ECF Nos. 19-7 at 2; 19-8 at 3; 19-9 at 2–3; 24-1 at 4–5; 19-5 at 2; 24-8 at 1–2.  Jeffries maintained at the time that she believed she could use the card for such purchases because her luggage had been stolen.  ECF No. 19-9 at 2.

After FEMA Supervisory Financial Management Specialist, Elizabeth Newman, counseled Jeffries about her unauthorized purchases, Jeffries acknowledged that she understood Newman's instructions and agreed to pay for the items herself. *Id*. at 2–3; ECF No. 24-1 at 4–5. This was the second such incident, the first involving Jeffries using her card to pay for postage. ECF No. 19-9 at 2–3.

Notwithstanding Jeffries credit card misuse, Perez "handpicked" Jeffries to deploy to Puerto Rico in response to hurricanes Irma and Maria. ECF 19-10 at 6.[2] While in Puerto Rico, Joliet Meyer was Jeffries' temporary direct supervisor. ECF No. 19-16 at 3.

Meyer directed Jeffries to report to the FEMA branch office in Aguadilla upon her arrival in Puerto Rico. ECF Nos. 19-13 at 3; 24-4 at 1–4. On December 15, 2017, Jeffries landed in San Juan late in the day. ECF Nos. 19-14 at 2; 19-16 at 3. Meyer granted Jeffries permission to report to the Aguadilla office the next morning so Jeffries could travel in daylight. *Id*. Jeffries, however, did not reach Aguadilla until late the next day, a Saturday, and did not report to the office. ECF Nos. 1-2 at 5–6; 19-1 at 4; 19-14 at 2. Because the office was closed on Sunday, Meyer directed Jeffries to report on Monday, December 18, 2017. ECF Nos. 1-2 at 6; 19-14 at 2; 19-16 at 3.

In Aguadilla, Jeffries immediately became ill with a cough and flu like symptoms. ECF Nos. 1-2 at 6; 19-3 at 6; 19-16 at 4. On Jeffries' first day in the office, Meyer ordered Jeffries to seek medical attention, and sent a colleague and native Spanish speaker, Awilda Ramos, to accompany her. ECF Nos. 1-2 at 6–7; 19-16 at 4. The treating physician ordered that Jeffries not go to work for five days, December 18 through 22. ECF Nos. 1-2 at 7, 24; 19-16 at 4; 24-3. Because Jeffries believed that she had become ill due to "[d]ebris and fumes" coming from

---

[2] Jeffries was notified in advance of Puerto Rico's "austere conditions" including limited lodging availability, sporadic power outages, and lack of air conditioning at some locations. ECF No. 24-4 at 7.

renovations of the hotel room adjacent to hers, she switched hotels.  ECF No. 1-2 at 6; 24-1 at 2.

During the five-day sick leave, Jeffries remained in contact with Meyer.  ECF Nos. 1-2 at 25; 19-13 at 3; 19-16 at 4; 19-18 at 2.  Shortly before Jeffries was scheduled to return to work, Meyer and FEMA Human Resources Lead, Treva Horton-Baker, called Jeffries to discuss her health and return plan.  ECF Nos. 1-2 at 8; 19-13 at 3–4; 19-16 at 4.  Because the island had experienced a serious flu outbreak, Meyer and Horton-Baker required Jeffries to see a physician before returning to work to verify her recovery and minimize risk of infecting staff.  ECF Nos. 19-16 at 4; 1-2 at 23.  Jeffries refused.  ECF Nos. 1-2 at 9; 19-16 at 4; 24-1 at 3.  Meyer and Horton-Baker responded that if Jeffries failed to be medically cleared, her mobilization to Puerto Rico would be revoked and she would be sent home.  ECF No. 19-16 at 4–5.  Ultimately, Jeffries did not obtain medical clearance, and on December 22, 2017, FEMA cancelled her Puerto Rico assignment.  ECF Nos. 1-2 at 8–9; 19-13 at 4; 19-16 at 5.

On December 23, 2017, during Jeffries' "check-out" from the Aguadilla office, Jeffries submitted to Meyer a formal "Request for Reasonable Accommodation" in which she sought a "better living arrangement i.e. a hotel room that is not near mold, dust or mildew."  ECF Nos. 19-16 at 5–7; 19-20 at 2–3.  In support of the request, Jeffries noted that she had been "diagnosed with a viral infection" by the physician she saw in Aguadilla and that she was "recovering from breast cancer in which my immune system is a little weak at times."  ECF No. 19-20 at 2–3.

On the same day, and as Jeffries was leaving her hotel, the power went out.  ECF No. 1-2 at 9–10.  Jeffries was caught in the elevator as she tried to retrieve her FEMA issued laptop, the only item that remained in her hotel room.  *Id*.; ECF No. 24-1 at 8–9.  Fearing she would miss her flight, Jeffries abandoned the laptop and arranged with Ramos to retrieve it.  ECF Nos. 1-2 at 9–10; 19-16 at 5; 19-22 at 2–6.  Ramos notified Meyer, and FEMA security obtained the laptop.

ECF No. 19-16 at 5; 19-21 at 2–6.

Believing that Meyer and Horton-Baker had devised a plan to remove her from the project on account of her illness, Jeffries contacted an EEO Counselor upon her return to the States. ECF No. 1-2 at 20–28; *see also* ECF No. 19-25 at 3. Three weeks later, Jeffries was fired. ECF No. 19-24 at 2–5. Perez authorized her termination based on (1) the unauthorized use of a FEMA credit card during the Austin deployment, (2) leaving the FEMA laptop in the Aguadilla hotel room, and (3) not following instructions to drive to the FEMA branch office in Aguadilla upon her arrival. ECF No. 19-10 at 5.

On March 6, 2018, Jeffries filed a formal charge with EEOC. *See* ECF Nos. 1-2 at 3–19; 19-25. The EEO matter proceeded to formal hearing before an Administrative Law Judge. However, the administrative action was dismissed after Jeffries initiated this action on June 20, 2019. ECF Nos. 1-2 at 1–3; 19-27 at 2.

Jeffries brings claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, contending that Defendant discriminated and retaliated against her, and failed to provide her reasonable accommodation for her physical disability. ECF No. 1-2 at 3, 12–17. Jeffries pursues similar claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, based on her race, sex, and national origin. ECF Nos. 1-2 at 7, 12–17; 19-25 at 3. Defendant urges dismissal of all claims as legally insufficient.

## II. Standard of Review

Defendant moves to dismiss, or alternatively for summary judgment. *See* ECF No. 19-1. A motion styled in the alternative implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure to convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007);

*Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd sub nom., Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462 (4th Cir. 2012).  Before a Rule 12(d) conversion, the parties must: (1) "be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment;" and (2) "be afforded a reasonable opportunity for discovery."  *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013) (internal quotation marks and citations omitted).

"When a party is aware that material outside the pleadings is before the Court," and where the pleading is captioned to be one alternatively seeking summary judgment, the non-movant has been afforded sufficient notice.  *Hart v. Shearin*, No. GLR-15-2056, 2016 WL 3459846, at *4 (D. Md. June 24, 2016) (citing *Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005)).  If the nonmovant objects to the Court reaching the claims at the summary judgment stage, she must file an affidavit pursuant to Rule 56(d).  The purpose of this affidavit is to ascertain what additional discovery is needed for the non-movant to challenge adequately a summary judgment motion.  *See* Fed. R. Civ. P. 56(d).  "The Fourth Circuit places 'great weight' on the affidavit requirement."  *Nautilus Ins. Co. v. REMAC Am., Inc.*, 956 F. Supp. 2d 674, 683 (D. Md. 2013) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).  However, non-compliance may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary."  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002).

Jeffries has received sufficient notice and directs the Court to evidence beyond the four corners of her Complaint.  ECF Nos. 19-1 at 9–10; 24-1 at 12; *see also* ECF Nos. 1-2 at 18 (noting Plaintiff's additional documents, emails, and messages to present as evidence); 19-2

(listing Defendant's index of exhibits); 24-2 (listing Plaintiff's index of exhibits).  She also does not seek additional discovery by Rule 56(d) affidavit or otherwise.  *See* Fed. R. Civ. P. 12 (d); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996).  Accordingly, the Court will treat the motion as one for summary judgment.

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment."  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  But, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'"  *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)).  Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted.  *Celotex*, 477 U.S. at 322.  Although a pro se party is "given some latitude," he may not avoid summary judgment by "relying on bald assertions and speculative arguments."  *Mansfield v. Kerry*, No. DKC 15-3693,

2016 WL 7383873, at *2 (D. Md. Dec. 21, 2016) (citing *Smith v. Vilsack*, 832 F. Supp. 2d 573, 580 (D. Md. 2011)).

### III. Analysis

#### A. Failure to Exhaust Administrative Remedies

As a preliminary matter, the Court first addresses whether Jeffries has exhausted administrative remedies prior to filing suit. *See* ECF No. 19-1 at 15. Defendant argues that because the EEOC only accepted for investigation the disability discrimination claim, the remaining claims are not properly before this Court. *Id.* The Court cannot agree.

Before a plaintiff may pursue discrimination and retaliation claims in federal court, she must file a formal charge with the EEOC. 42 U.S.C § 2000e-5(e)(1); *see also Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019) ("Title VII's charge-filing requirement is a processing rule, albeit a mandatory one."). The initial charge circumscribes the claims that plaintiff may pursue in this Court. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996) ("Only those . . . claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit."). Importantly, claims advanced in a complaint are exhausted if they are "reasonably related" to the administrative charge and "can be expected to follow from a reasonable administrative investigation." *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012); *see also Jones v. Calvert Grp., Ltd.*, 511 F.3d 297, 304 (4th Cir. 2009), *abrogated on other grounds by, Fort Bend Cty.*, 139 S. Ct. 1843. By contrast, a plaintiff generally fails to exhaust administrative remedies where a charge of discrimination "references 'different time frames, actors, and discriminatory conduct' than the allegations found in a

complaint." *Wright v. Kent Cty. Dep't of Soc. Servs.*, No. ELH-12-3593, 2014 WL 301026, at *11 (D. Md. Jan. 24, 2014) (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005)).

The exhaustion inquiry focuses, as it must, on Jeffries' formal EEOC charge. *See* ECF Nos. 1-2 at 3–19; 19-25 at 2–3. All claims on which Jeffries proceeds in this Court had been included in the formal charge.[3] Accordingly, FEMA was placed "on notice of the claims raised against it." *Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999). This is all that is required of exhaustion. Thus, the claims are exhausted and must next be addressed on the merits.

## B.   Disability Discrimination Claims

### 1.   Failure-to-Accommodate

Jeffries first alleges that Defendant failed to provide her reasonable accommodation in light of her physical disability and in violation of the ADA, 42 U.S.C. §§ 12101 *et seq*. ECF No. 1. Defendant rightly suggests in its motion that Jeffries' claims instead rest with the Rehabilitation Act, 29 U.S.C. § 701 *et seq*., which is the exclusive vehicle for disability claims brought against a federal entity. *Brown v. Henderson*, 6 F. App'x 155, 156 (4th Cir. 2001); 42 U.S.C. §§ 12111(5)(B)(i), 12131(1); *see also* ECF No. 19-1 at 11. That said, "[t]he scope of liability under the ADA is generally the same as that under the Rehabilitation Act," *Wood v. Md. Dep't of Transp.*, 732 F. App'x 177, 180–81 (4th Cir. 2018) (citation omitted), and both "are construed to impose the same requirements due to the similarity of the language of the two acts." *Id.* at 182 (citation omitted); *see Brady v. Bd. of Educ. of Prince George's Cty.*, 222 F. Supp. 3d

---

[3] Although Jeffries did not check the "box" on the form indicating she was pursuing a retaliation claim, she laid out the factual predicate in great detail—all involving the same set of events, supervisors, and conduct averred in this case. ECF No. 1-2 at 9, 11, 20, 25–26.

459, 468 (D. Md. 2016); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57 (4th Cir. 1995), *as amended* (June 9, 1995), *as amended* (Mar. 14, 2008) ("[T]o the extent possible we adjudicate ADA claims in a manner consistent with decisions interpreting the Rehabilitation Act."). Jeffries proceeds pro se. Accordingly, the Court will treat the claim as one brought properly under the Rehabilitation Act.

To prevail under a Rehabilitation Act § 504 claim, "a plaintiff must show that she was excluded from participation in, or denied the benefits of, a program or service offered by a public entity, or subjected to discrimination by that entity." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (emphasis omitted). "Discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A) (from Title I's definition). To establish a *prima facie* case, Jeffries must show that (1) she qualifies as an 'individual with a disability'; (2) the defendant had notice of her disability; (3) she could perform the essential functions of her job with a reasonable accommodation; and (4) the defendant refused to make any reasonable accommodation. *Brady*, 222 F. Supp. 3d at 468 (quotation marks and citation omitted). If a plaintiff establishes a *prima facie* case, the Defendant may still avoid liability if it can show "as a matter of law that the proposed accommodation will cause undue hardship in the particular circumstances." *Reyazuddin v. Montgomery Cty.,* 789 F.3d 407, 414 (4th Cir. 2015).

Viewing the record most favorably to Jeffries, sufficient evidence exists that Defendant knew Jeffries possessed a qualifying disability. Perez admits to having received a "very private document" that put him on notice of her illness. ECF No. 19-10 at 3. Additionally, although Meyer professed no knowledge of Jeffries' health conditions (breast cancer survivor with

reduced immune system), Meyer had signed the formal request for accommodation that noted Jeffries' disability. ECF Nos. 19-16 at 5; 19-20 at 2–3.

However, the claim cannot survive challenge because no evidence exists that Jeffries did not receive her requested accommodation. ECF No. 19-20 at 2–3. Jeffries requested a new hotel room away from what she perceived were conditions that exacerbated her illness. She secured just that, having moved to another hotel almost immediately upon her arrival that accommodated her medical needs. Further, the record demonstrates that FEMA was willing to keep Jeffries in her assignment, and with the current accommodations, provided she obtain a follow-up physical to demonstrate fitness for duty. By contrast, no evidence demonstrates that if Jeffries had obtained the medical clearance, she would be denied the hotel room in which she was staying without difficulty. Thus, the claim fails on this basis.

Jeffries now contends that she did not consider the request for a new room to be her formal request for accommodation. She instead argues that her requested accommodation was for medical absence for five days per the doctor's note. ECF No. 24-1 at 8; *see* ECF No. 24-3. But FEMA granted her this accommodation as well. Jeffries was not demobilized from Puerto Rico because she needed five days off. She was demobilized because she refused to obtain a follow-up medical evaluation. EFC Nos. 1-2 at 25; 19-13 at 3; 19-16 at 4; 19-18 at 2. This evaluation, the record shows, reflected FEMA's policy that employees "suspected or confirmed to have contracted a highly contagious disease" may return to work only after obtaining medical clearance. ECF Nos. 19-1 at 5; 19-13 at 3–4; 19-16 at 4; 19-4 at 9. Jeffries has marshaled no evidence that this requirement was pretextual or otherwise illegitimate. Nor does the record reflect that Jeffries obtained such clearance from a doctor as directed. ECF No. 19-4 at 9. At bottom, no evidence exists that Jeffries was denied a reasonable accommodation. Summary

11

judgment is therefore granted in favor of Defendant on this claim.

### 2. Discrimination Under the Rehabilitation Act

The Court next turns to Jeffries' disability discrimination claim.  ECF No. 1-2.  To establish a *prima facie* discrimination claim under the Rehabilitation Act, the plaintiff must show that she is an otherwise qualified individual who is disabled and is being excluded from the participation in, being denied benefits of, or being subjected to discrimination under the program solely by reason of her disability, and that the program or activity receives federal funding. *Armstead v. Becton Dickinson Primary Care Diagnostics, Inc.*, 919 F. Supp. 188, 192 (D. Md. 1996).  If the plaintiff establishes a *prima facie* case, the burden shifts to defendant to provide a legitimate, nondiscriminatory reason for its conduct.  *See Perry v. Computer Scis. Corp.*, 429 F. App'x 218, 219–20 (4th Cir. 2011) (applying *McDonnell Douglas* framework to Rehabilitation Act claim).  If the plaintiff provides such a reason, the defendant "bears the ultimate burden of persuasion" and "must show by a preponderance of the evidence that the proffered reason was a pretext for discrimination."  *Id.* at 220.

No real dispute exists that Jeffries suffered from a qualifying disability.  Rather, the parties hotly dispute whether she was terminated on account of her disability.  Defendant has marshaled sufficient evidence that Jeffries was fired for legitimate nondiscriminatory reasons.  *See* ECF No. 19-24 at 2–5.  Jeffries had violated several FEMA regulations.  She used her FEMA credit card for personal purchases, left her FEMA issued laptop behind in Puerto Rico, and did not report as directed.  Perez, as the ultimate decisionmaker regarding her termination, cited to each as grounds supporting his decision.

Accordingly, to survive summary judgment, Jeffries must put forward some evidence that Defendant's stated termination grounds were a pretext for disability discrimination.  When

viewing the record most favorably to Jeffries, no rational trier of fact could conclude she was terminated on account of her disability.  The evidence instead reflects that Perez knew of Jeffries' illness when he hand-picked her for the Puerto Rico deployment, and that he terminated Jeffries for one of two reasons.  He terminated her either because of, as he states, her cumulative violations, including misusing her credit card twice upon leaving for Puerto Rico, failing to report on time when she arrived in Puerto Rico, and leaving her government-issued FEMA laptop in a vacant hotel room.  Or, as discussed in the next claim, he fired her because she filed an EEO charge.  While the latter reason is grounds to support a retaliation claim, it does not sufficiently aid Jeffries' argument that she was fired due to her disability.  *See Bala v. Virginia Dept. of Conservation and Recreation*, 532 F. App'x 332 (4th Cir. 2013) (plausible allegation of retaliation does not necessarily support discrimination claim); *Prince-Garrison v. Maryland Dep't of Health & Mental Hygiene*, 317 F. App'x 351, 355 (4th Cir. 2009) ("While the activities Prince–Garrison complained of do not amount to actual discrimination or harassment prohibited by Title VII, it is enough for a retaliation claim that Prince–Garrison reasonably believed she was engaging in protected activity by complaining about them.").

Indeed, Jeffries marshals no evidence that Perez's decision was at all motivated by her disability, or her request for accommodation while in Puerto Rico.  Jeffries was in fact granted the accommodation she requested.  Perez was also aware of Jeffries' "private" medical condition when he chose her for the Puerto Rico assignment, further undermining any claim that his decision to terminate her was pretextual.  *See Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991) (finding that "a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer" when hiring and firing take place close in time and involve the same decisionmakers).  In short, because the evidence viewed most charitably to

13

Jeffries does not demonstrate that Perez's grounds for termination were pretext for discrimination on account of her disability, summary judgment is granted in Defendant's favor.

### C. Retaliation

As foreshadowed, Jeffries' retaliation claims warrant a different result. To establish a *prima facie* case of retaliation under either the Rehabilitation Act and Title VII, Jeffries must show (1) that she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the two. *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998). In the context of an employee termination, the plaintiff must bring forward some evidence that she would not have been terminated "in the absence of the alleged wrongful action . . . of the employer." *Hart v. Lew*, No. ELH-12-03482, 2015 WL 521158, at *28 (D. Md. Feb. 6, 2015), *aff'd*, 612 F. App'x 688 (4th Cir. 2015); *see also Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 210–11 (4th Cir. 2014) (refusing to base its decision on allegations of retaliation on whether or not the termination decision was "wise, fair, or even correct."). Put differently, although a plaintiff's engagement in protected activity does not immunize her from appropriate discipline, evidence tending to show the discipline was unwarranted may be sufficient to survive challenge. *See Guerrero v. Lynch*, 621 Fed. Appx. 755, 757 (4th Cir. 2015) (citing *Glover v. S.C. Law Enf't Div.,* 170 F.3d 411, 414 (4th Cir. 1999)).

Viewing the record most favorably to Jeffries, the claim must proceed. Within three weeks of returning from Puerto Rico, Jeffries notified FEMA's EEO Counselor that she believed she had been the victim of discrimination and copied Perez and other supervisors on that charge. *See* ECF No. 1-2 at 20–28. At that time, Jeffries had already been counseled for her misuse of the credit card, and so a reasonable finder of fact could conclude that issue had been resolved,

only to be resurrected in response to Jeffries' formal discrimination complaint.

As for the other two violations, Jeffries had not been afforded any opportunity for progressive discipline of any kind, contrary to FEMA's stated policy.  Further, although Perez was authorized to bypass progressive discipline, a reasonable trier of fact could conclude his stated reasons for not employing such progressive measures were illogical and incredible.  "I attempt to follow the progressive discipline rules," Perez attested, "but sometimes I feel like I do not have to . . . In this case, [Jeffries] has proven to me that I cannot trust her to make good decisions."  ECF 19-10 at 5.  Perez also appears to contradict himself as to Jeffries' overall performance, attesting that she was "okay" in a prior assignment, *id.*, but then noting glowing reviews he had received about her and that his "faith had been restored."  *Id.* at 6.  In light of FEMA's progressive discipline policy, in which Jeffries never had the opportunity to participate, and Perez's oversimplified explanations for circumventing the same, a reasonable juror could conclude Jeffries had been terminated for complaining to the EEOC.  Summary judgment is denied as to the retaliation claims.

### D.   Title VII Discrimination

Turning to Jeffries' other discrimination claims, Defendant contends that summary judgment is warranted because no evidence demonstrates that she was terminated on account of race or gender.  Title VII provides that it is unlawful "for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Title VII also makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by

[Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." § 2000e-3(a).

For her Title VII discrimination claims to survive, Jeffries must show that "(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 285 (4th Cir. 2004) (en banc)). Title VII discrimination claims use a similar burden-shifting framework previously discussed. Notably, Jeffries must generate some evidence from which a reasonable factfinder may conclude that Defendant "discriminate[d] against [her] with respect to [her] compensation, terms, conditions, or privileges of employment, *because of* [her] race, . . . sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added); *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).

The parties do not dispute that Jeffries, an African American woman, is a member of a protected class and that her termination constitutes an adverse employment action. *See* ECF Nos. 1-2 at 7; 19-24 at 2–5. Jeffries, however, can point to no evidence that she was fired on account of her race or gender. Unlike the retaliation claim, where the evidence shows Jeffries had been terminated immediately after she pursued relief from the EEOC, no facts link her termination to race or gender. To be sure, Jeffries may have been the "ONLY African American in the Human Resources Office," ECF No. 1-2 at 7, but she has generated nothing to support that this fact motivated Perez to fire her.[4] *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187,

---

[4] Jeffries seems to contend that her claim may proceed because Meyer requested English speaking employees be deployed to Puerto Rico, which in turn adversely affected Jeffries, a Spanish-speaker. This contention

16

190–91 (4th Cir. 2010). Indeed, Perez "handpicked" Jeffries for the Puerto Rico deployment knowing Jeffries was an African American female, which undercuts any plausible inference that she was terminated on account of race or gender. Nor is there any evidence that her position remained open or was filled by a member outside her protected class. Accordingly, summary judgment must be granted on these claims.[5]

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 19-1) is granted in part and denied in part. A separate Order follows.

|  |  |
|---|---|
| 7/24/2020 | /S/ |
| Date | Paula Xinis |
|  | United States District Judge |

---

is inscrutable and nonetheless fails because no evidence reflects that Meyer was involved in Jeffries' termination. ECF No. 19-16 at 5.

[5] The Complaint also cites to the Equal Pay Act, 29 U.S.C. § 206(d)(1), and the Age Discrimination Employment Act, 29 U.S.C. §§ 623(a)(1), 631(a), but avers no facts to support any claims under these statutes. ECF No. 1-2 at 14. Jeffries also invokes 42 U.S.C. §§ 1981, 1983 in support of her request for "enforcement" and "punitive damages." ECF No. 1-2 at 13–16. Because Title VII is the "the exclusive judicial remedy for claims of [racial] discrimination in federal employment," *Brown v. GSA*, 425 U.S. 820, 835 (1976), a parallel statutory claim cannot lie. Accordingly, to the extent Jeffries intended to raise separate claims under the Equal Pay Act, the ADEA, or § 1981 and § 1983, they do not survive challenge.